IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE A. McCARTY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 12-1388 |
| ) | |
| MICHAEL J. ASTRUE, ) | Judge Cathy Bissoon |
| Commissioner of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

### I. MEMORANDUM

For the reasons that follow, Plaintiff's Motion for Summary Judgment (Doc. 8) will be granted, and Defendant's Motion for Summary Judgment (Doc. 11) will be denied.

Julie A. McCarty ("Plaintiff") has filed this social security appeal pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.  Plaintiff argues that the administrative decision is not supported by substantial evidence in the record and, therefore, must be remanded.  More specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") did not hold a full and fair hearing and failed to properly evaluate Plaintiff's fibromyalgia, fatigue and insomnia at step-two of his five-step analysis.  Defendant argues that the ALJ held a full and fair hearing and properly evaluated all of Plaintiff's ailments, including her fibromyalgia, fatigue and insomnia.

Having carefully reviewed the entire record, the undersigned concludes that the ALJ did not hold a full and fair hearing. Accordingly, this case will be remanded for further administrative proceedings consistent with the Court's Memorandum and Order.

**Background**

Plaintiff applied for DIB on January 7, 2008. (R. at 24). In her application, Plaintiff claimed an initial onset date of December 31, 2006, and disability due to arthritis and chronic pain. (R. at 133). Plaintiff was found not disabled and her application initially denied on May 16, 2008, and upon reconsideration on February 6, 2009. (R. at 57, 59). Thereafter, Plaintiff filed a written request for hearing before an ALJ, which took place in Sanford, North Carolina on May 6, 2010. (R. at 37).

By decision dated August 26, 2010, the ALJ denied Plaintiff's claim for DIB, finding that she was not disabled from December 31, 2006, through August 26, 2010 (the date of the decision), as defined in the Social Security Act. (R. at 30). At the time of her hearing, Plaintiff, who appeared *pro se*, was a fifty-one year old woman who completed high school and three years of college. (ECF No. 8 at 3). Her past work experience included employment as a secretary and bookkeeper. (R. at 30). In 2006, Plaintiff began to see a series of doctors regarding complaints of severe joint pain due to arthritis, insomnia, dizziness and fibromyalgia. (ECF No. 8 at 3-6).

In his decision, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, and under 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1520(c) was suffering from severe impairments of morbid obesity, osteoarthritis, allied disorders and disorders of the back. (R. at 26, 27). The ALJ determined that Plaintiff's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1 (the

"Listing of Impairments"). Id. In accordance with 20 C.F.R. § 404.1545, the ALJ assessed Plaintiff's residual functional capacity as follows:

> Claimant is able to lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk at least 2 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday. The claimant can perform the following routine postural activities occasionally: climbing ramps/stairs, balancing, stooping, kneeling, crouching or crawling; however she should avoid climbing ropes/ladders/ scaffolds. In addition, she can perform bilateral manual dexterity for both gross and fine manipulation, with reaching and handling. The claimant has no additional manipulative, visual, commutative or environmental limitations.

Id.

The ALJ went on to determine that Plaintiff is capable of performing her past relevant work as a secretary and bookkeeper.[1] (R. at 30).

**Analysis**

Under the Social Security Act, a claimant has the right to a full and fair hearing. Richardson v. Perales, 402 U.S. 389, 401-402 (1971); 42 U.S.C § 405(b)(1). At an administrative hearing, the ALJ has a duty to develop a full and fair record, and must secure relevant information regarding the claimant's entitlement to social security benefits. Sims v. Apfel, 530 U.S. 103, 110–111 (2000). This duty is of particular importance, and requires the ALJ to proceed with "a heightened level of care", when the claimant appears *pro se*.[2] Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir.2003) (internal quotations omitted). Implicit within this "heightened level of care" is an affirmative obligation to assist the claimant in developing a complete administrative record through scrupulous and conscientious probing into, and inquiry of, all the relevant facts. Id.

---

[1] The ALJ chose not to consult a vocational expert in reaching his decision.
[2] During the hearing Claimant was informed of her right to counsel and elected to proceed without counsel. (R. at 40).

While the Third Circuit does not prescribe any particular set of procedures that an ALJ must follow when a claimant appears *pro se*, a review of the record in this case makes clear that the procedures the ALJ did follow were insufficient. The ALJ failed to fulfill his obligation to Plaintiff when he did not question Plaintiff about her array of ailments and their impact on her daily life activities and ability to work. As a result, the ALJ failed to explore all relevant evidence in assessing Plaintiff's functional capacity, and Plaintiff did not receive a full and fair hearing.

Plaintiff's medical records indicate a history of treatment for, among other ailments, severe joint pain attributable to arthritis, insomnia, vertigo and fibromyalgia. In addition, during the hearing, Plaintiff testified that she has difficulty getting in and out of chairs, has severe swelling in her feet, knees, toes, ankles, hips, hands and neck. (R. at 45). Plaintiff also indicated that she has difficulty walking and has a history of severe joint pain, and suffers from hallucinations, vertigo and dizziness due to insomnia. (R. at 52). Despite this medical evidence and testimony, the ALJ did not pose a single question to explore Plaintiff's ailments and their impact on her daily life or ability to work. The Court notes that the ALJ did ask the general question: "[o]kay, in your opinion, what is the primary reason that you believe you're not capable of working?" (R. at 44). But with no follow-up questions to Plaintiff's general answers, this questioning cannot be described as a scrupulous and conscientious exploration for all the relevant facts.[3] While the ALJ must not serve as an advocate for a *pro se* claimant, the ALJ

---

[3] The medical records indicate that in March and July 2008, throughout 2009 and 2010, Plaintiff presented to Chatham Medical Specialists ("Chatham") with complaints of severe pain. (R. at 398, 392, 446, 456). In addition, in September 2009, Plaintiff was referred by Chatham medical providers to orthopedic surgeon Edward Mulcahy, M.D. with complaints of bilateral foot pain and swelling. (R. at 353-360). Dr, Mulcahy ultimately diagnosed Plaintiff with plantar fasciitis. Id. The ALJ did not question Plaintiff concerning these medical records and her complaints of pain, despite his duty to consider seriously her subjective complaints of pain and to probe

must "assume a more active role when the claimant is unrepresented." See <u>Dobrowolsky v. Califano</u>, 606 F.2d 403, 407 (3d Cir.1979); see also <u>Lashley v. Sec'y of Health & Human Servs.</u>, 708 F.2d 1048, 1052 (6th Cir.1983) (remanding case and criticizing ALJ when hearing was only 25 minutes long and claimant was "only superficially questioned concerning his daily activities and his physical limitations.")

     Instead of developing the record, the ALJ spent nearly half of the hearing (which lasted only 30 minutes) berating and lecturing Plaintiff about her weight and offering commentary on her "lifestyle choices." The following are revealing excerpts from the transcript. The ALJ initially interrupts Plaintiff's description of her difficulty walking to question her about her height and weight, which was established to be approximately five feet five inches and 286 pounds. The following ensued:

ALJ:   Well, I mean, you're an educated woman, you're coming in here telling me that you can't work because you got all these problems with your knees and your feet and your back and your fibromyalgia and everything else, and you know and I know, that your normal, your normal body weight – 65 inches tall, under ideal conditions, you should weigh 162 pounds.

CLMT: I know, I'm…

ALJ:   And it's also an assumption that if you were 100 percent above your normal body weight, guess what, you're going to have problems with your back, you're going to have problems with your knees, you're going to have problems with your ankles, with your feet. You know what I mean?

(R. at 49).

ALJ:   286? So you can see that's like almost double your normal body weight. And with your education, you know how, how devastating that is. 286, getting damn near the end of the chart here. That gives you a BMI of 48. That's like I said, that's your choice. That's your choice. At one point, I would simply say that's a lifestyle choice. You got exactly what you wanted, God

---

further. See <u>Baerga v. Richardson</u>, 500 F.2d 309, 312 (3d Cir.1974) ("[I]n addition to objective medical facts and expert medical opinions, the hearing examiner must consider the claimant's subjective evidence of pain and disability […] and all of these factors must be viewed against the applicant's age, educational background and work experience.")

bless you.

(R. at 52). [4]

In this case, it is clear that the ALJ failed to fulfill his obligation to provide a full and fair hearing. The ALJ failed to assist *pro se* Plaintiff in developing a full record and failed to explore all relevant facts. Undoubtedly, an inquiry into all relevant factors to determine Plaintiff's entitlement to disability benefits would include more than superficial questioning of Plaintiff's ailments and functional capacities. The Court finds particularly troubling the ALJ's comments concerning Plaintiff's weight, which were coercive and intimidating, and resulted in nothing more than a lecture on lifestyle choices.

**Conclusion**

For all of the reasons stated above, Plaintiff's Motion for Summary Judgment is GRANTED insofar as it seeks a remand for further administrative proceedings, and Defendant's Motion for Summary Judgment is DENIED. This case is **REMANDED** for further proceedings before the Commissioner as outlined in the following Order.[5]

---

[4] Following these statements, the ALJ does indicate that he will take Plaintiff's obesity "into consideration," but as the record reflects, the ALJ failed to ask Plaintiff a single question on how her weight limits her daily life activities or ability to work. The Court does not suggest that an ALJ may not question a claimant concerning her weight. To the contrary, the ALJ has a duty to consider a claimant's obesity in with her other impairments. Diaz v. Commissioner of Social Sec., 577 F.3d 500, 504 -505 (3d Cir. 2009) (reversing, in part, because of the ALJ's failure to analyze the cumulative impact of claimant's obesity and other impairments on her functional capabilities). In this case, the ALJ's line of questioning was not designed to elicit testimony concerning the impact of obesity on her functional capabilities. This is evidenced by the absence of a single question regarding her obesity's impact on her functional capabilities.

[5] As a practical matter, the Court will not order that Plaintiff's hearing be conducted in front of a different ALJ. As the record reflects, Plaintiff has moved from North Carolina to Pennsylvania and her hearing will presumably take place in Pennsylvania.

## II. ORDER

For the reasons stated above, the Court hereby **ORDERS** that Plaintiff's Motion for Summary Judgment (Doc. 8) is **GRANTED**; and Defendant's Motion for Summary Judgment (Doc. 11) is **DENIED**; and this case is **REMANDED FORTHWITH** for further administrative proceedings consistent with the Court's Memorandum and Order.

**IT IS SO ORDERED**.

s/ Cathy Bissoon
Cathy Bissoon
United States District Judge

September 24, 2013

cc (via ECF):

All counsel of record.